## ARTHUR IACURCI *v.* LARRY SAX ET AL.
### (AC 33318)

Lavine, Alvord and Espinosa, Js.

Argued March 19—officially released December 4, 2012

*Gary A. Mastronardi*, for the appellant (plaintiff).

*Kerry R. Callahan*, with whom, on the brief, was *David R. Makarewicz*, for the appellees (defendants).

*Opinion*

ESPINOSA, J. The plaintiff, Arthur Iacurci, appeals from the summary judgment rendered by the trial court in favor of the defendants, Larry Sax and Cohen, Burger, Schwartz and Sax, LLC (accounting firm). The plaintiff claims that the court improperly allocated to him the burden of proof with regard to his allegation that the statute of limitations was tolled by operation of the fraudulent concealment statute. We affirm the judgment of the trial court.

The following procedural history underlies this appeal. On November 10, 2009, the plaintiff commenced an action against Sax and the accounting firm by virtue of a four count complaint. Counts one and two, sounding in professional malpractice and negligence, respectively, were brought against Sax. Counts three and four, sounding in professional malpractice and negligence, respectively, were brought against the accounting firm.

In relevant part, the plaintiff alleged that Sax was a licensed certified public accountant who, for tax years 1999 through 2005, prepared federal and state income tax returns, on behalf of the accounting firm, for the plaintiff and Barbara Iacurci. The accounting firm's primary business was to provide certified accounting services. The plaintiff alleged that, for tax years 1999 through 2002, Sax "portrayed the [p]laintiff [on tax returns] as a real estate investor." The plaintiff alleged that, for tax years 2003 through 2005, Sax "portrayed the [p]laintiff [on tax returns] as an individual engaged in the business of real estate," and that this arbitrary

change in the plaintiff's tax filing status description resulted in adverse tax consequences for the plaintiff. In 2007, the plaintiff alleged, he "disassociated professionally" from Sax and the accounting firm, and hired a different accounting firm to prepare his federal and state tax returns. His newly hired firm noticed the change Sax had made to his client's tax status and, in February, 2007, the successor firm filed amended tax returns for tax years 2003, 2004 and 2005, which portrayed him as a real estate investor. The plaintiff alleged that the Internal Revenue Service (IRS) conducted an audit for the tax years at issue and upheld his tax status as a real estate investor.

In count one, the plaintiff alleged that Sax failed "to exercise that degree of care and skill ordinarily and customarily provided by [c]ertified [p]ublic [a]ccountants" by modifying his tax status in the manner that he did, not advising him of the tax ramifications of changing his tax status and not advising him as to the potential for an audit by the IRS as a result of the change in tax status. In count two, the plaintiff alleged that Sax "owed a duty to the [p]laintiff to provide tax preparation services" and that he breached that duty in the manner set forth previously. The plaintiff alleged that Sax's conduct caused him monetary damages.

In count three, the plaintiff alleged that the accounting firm failed "to exercise that degree of care and skill ordinarily and customarily provided by [c]ertified [p]ublic [a]ccountant firms in monitoring, reviewing, approving, and issuing tax returns under the firm name," and committed professional malpractice by allowing the modification in his tax status and by not ensuring that this modification was fully and frankly discussed with him. In count four, the plaintiff alleged that the accounting firm owed him "a duty to . . . provide tax preparation services," and that it breached that duty by modifying his tax status and not discussing

with him the potential that the modification would lead to an audit by the IRS. The plaintiff alleged that the accounting firm's conduct caused him monetary damages.

In December, 2009, the defendants filed an answer and special defense, alleging, in relevant part, that the plaintiff's claims were time barred by operation of the applicable statute of limitations, General Statutes § 52-577. In January, 2010, the plaintiff filed a reply in which he summarily denied the special defense. In June, 2010, the defendants filed a motion for summary judgment, in which they asserted that the last act upon which the plaintiff's claims were based was the completion and filing of a tax return on April 17, 2006, the plaintiff did not commence suit until November 10, 2009, and the action was untimely under § 52-577. Attached to their memorandum of law in support of the motion for summary judgment, the defendants filed several exhibits as well as an affidavit of Sax. In his affidavit, Sax averred that he prepared and filed the plaintiff's 2005 federal and state tax returns by April 17, 2006. In July, 2010, absent objection, the plaintiff amended his reply, thereby asserting that the statute of limitations was tolled by operation of Connecticut's fraudulent concealment statute, General Statutes § 52-595.

In July, 2010, the plaintiff filed an objection to the defendants' motion for summary judgment. Essentially, the plaintiff argued that summary judgment was inappropriate because issues of material fact existed as to whether the fraudulent concealment statute applied and tolled the statute of limitations. In his memorandum of law, the plaintiff argued, inter alia, that the parties were in a fiduciary relationship and that the defendants owed the plaintiff a fiduciary duty to disclose the tax information on which the action was based. The plaintiff submitted his own affidavit in which he averred, in relevant part, that he had trust and confidence in the defendants;

in tax matters, the defendants had superior knowledge, skill and expertise; and "[he] believed, at all times, that, in preparing [his] tax returns, they were proceeding in [his] best interests." Also, the plaintiff submitted the affidavit of Robert Walsh, a financial planner licensed in Connecticut.

In October, 2010, the defendants filed a memorandum of law in reply to the plaintiff's objection to their motion for summary judgment. The defendants argued that the fraudulent concealment statute was "completely inapplicable in this matter." The defendants also argued that they were not aware of the plaintiff's cause of action, they did not conceal anything from the plaintiff and they did not play any role in the plaintiff's late filing of the complaint. Addressing the plaintiff's argument that a fiduciary relationship existed between the parties, the defendants asserted that the case law relied on by the plaintiff for this proposition was *wholly inapplicable to accounting malpractice cases.* (Emphasis in original.)

In January, 2011, the court heard arguments on the motion for summary judgment, and the fiduciary relationship issue was hotly debated at the hearing. The defendants argued that the plaintiff could not demonstrate any of the elements of fraudulent concealment. The defendants contended that insofar as the plaintiff relied upon the existence of a fiduciary relationship between the parties to demonstrate nondisclosure under the fraudulent concealment statute, the plaintiff was unable to demonstrate that the defendants, who merely were tax preparers, were fiduciaries. The plaintiff replied that there was a genuine issue of material fact as to whether he and the defendants were in a fiduciary relationship and, thus, whether the defendants' nondisclosure of facts related to the plaintiff's cause of action satisfied the fraudulent concealment statute, thereby tolling the statute of limitations.

On March 25, 2011, the court issued its memorandum of decision granting the defendants' motion for summary judgment. Over the defendants' objection, the court relied on Walsh's affidavit, including his expert opinion as a licensed financial planner that the defendants, certified public accountants, breached a fiduciary duty owed to the plaintiff.[1] The court determined, first, that the plaintiff had not refuted the fact that the latest date on which the defendants rendered professional services for the plaintiff was April 17, 2006, and that the plaintiff commenced the present action on November 10, 2009. The court determined that the plaintiff had not demonstrated that a genuine issue of material fact existed as to whether the plaintiff's claims were time barred. The court then shifted the burden to the plaintiff to demonstrate that a genuine issue of material fact existed as to whether the fraudulent concealment statute applied and tolled the statute of limitations.

The court correctly observed that § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon discovers its existence." General Statutes § 52-595. Also, the court correctly set forth the well established elements of fraudulent concealment: "To prove fraudulent concealment, a plaintiff must prove that the person concealing an action '(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff['s] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the plaintiff['s] part in filing a complaint on [the] cause of action.' *Falls*

---

[1] The issue of whether the court properly admitted that affidavit is not before us.

*Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* 281 Conn. 84, 105, 912 A.2d 1019 (2007)."

Addressing the first element, the court readily concluded that "there is no evidence that the defendants had actual knowledge that [the change in the plaintiff's tax status made by the defendants] was incorrect, that the plaintiff overpaid his taxes or suffered any injury, or that the plaintiff had a cause of action."

With regard to the second element, the court stated that the plaintiff need not present evidence of affirmative acts of concealment by the defendants if the parties were in a fiduciary relationship because the mere nondisclosure of the material facts necessary to establish the plaintiff's cause of action would suffice if such a relationship existed. The court went on to explain: "The plaintiff attests in his affidavit that he relied on the defendants as tax experts with their superior knowledge and skill when compared to his own knowledge in tax matters. He also affirms that he trusted the defendants to prepare his taxes for him for seventeen years from 1989 to 2006. Walsh attests that, in his expert opinion, the defendants owed a fiduciary duty to the plaintiff, and he further states that a change in the plaintiff's tax status was a material fact that should have been disclosed. The plaintiff has submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff, and their failure to disclose his changed status on the tax returns was a breach of their duty to disclose material facts to the plaintiff."

Addressing the third element, the court concluded that the plaintiff did not present any evidence that the defendants failed to disclose information about the change in his tax status because they intended to delay the filing of a complaint.

The court concluded its analysis by observing that, with regard to the second element, the plaintiff had

presented evidence that the defendants failed to disclose material information, but that the plaintiff failed to present evidence sufficient to demonstrate that a genuine issue of material fact existed with regard to the first and third elements of the fraudulent concealment statute. Having concluded that the plaintiff failed to meet his burden under § 52-595, the court granted the defendants' motion for summary judgment.

On appeal, the plaintiff, relying on *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 423 (2d Cir. 1999), and related authority, asserts that the court's analysis was flawed.[2] The plaintiff

---

[2] In *Martinelli*, the United States Court of Appeals for the Second Circuit stated: "We know of no Connecticut case that holds that the burden of proof is on the plaintiff to prove fraudulent concealment if the action is brought by a person against someone with a fiduciary duty toward him or her that is related to the claim . . . . We conclude that where a defendant owes a fiduciary duty to a plaintiff and the plaintiff asserts under the fraudulent concealment tolling statute that the defendant has fraudulently concealed the plaintiff's cause of action, Connecticut law requires that the defendant bear the burden of proof as to the elements of fraudulent concealment . . . . If the fiduciary is to avoid the application of the tolling statute, the defendant must show that one of [the] elements [of fraudulent concealment] is not met." *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 196 F.3d 423.

There is ample case law supporting the proposition that, in cases involving claims of fraud, self-dealing or conflict of interest, a fiduciary bears the burden of proving fair dealing by clear and convincing evidence. See, e.g., *Przekopski* v. *Przekop*, 124 Conn. App. 238, 244, 4 A.3d 844 (2010); *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 75, 940 A.2d 878 (2008). Yet, to our knowledge, no Connecticut court has held that a fiduciary bears the burden of proving fair dealing, or that the elements of fraudulent concealment are not met, when faced with an allegation of fraudulent concealment.

In *Falls Church Group, Ltd.*, our Supreme Court stated: "This court 'has not yet decided whether affirmative acts of concealment are always necessary to satisfy the requirements [of . . . § 52-595].' " *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 107, quoting *Connell* v. *Colwell*, 214 Conn. 242, 250 n.6, 571 A.2d 116 (1990). The court went on to observe that federal case law suggests that "although fraudulent concealment generally requires an affirmative act of concealment, nondisclosure is sufficient when the defendant has a fiduciary duty to disclose material facts." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v.

argues that, having determined that the defendants owed the plaintiff a fiduciary duty, the court was required to shift the burden of proof to the defendants to demonstrate that one or more of the elements of fraudulent concealment could not be satisfied. Thus, the plaintiff argues that the court properly determined that there was sufficient evidence to demonstrate that a fiduciary relationship existed, but improperly required the plaintiff to prove that the defendants fraudulently concealed his cause of action. Moreover, the plaintiff argues that summary judgment was inappropriate because, if the court properly shifted the burden, it should have concluded that the defendants failed to demonstrate that no genuine issue of material fact existed as to whether they fraudulently concealed his cause of action—the defendants had not presented evidence to disprove any of the elements of the fraudulent concealment statute. We reiterate that the plaintiff's burden shifting claim is premised on *Martinelli*. We are unaware of any Connecticut court, applying the fraudulent concealment statute, that has shifted the burden of proof in this manner.

The defendants did not address the merits of the plaintiff's claim in their principal brief or appellate arguments, but argued that this court should decline to review the burden of proof issue because (1) the plaintiff did not preserve the claim before the trial court and (2) the plaintiff failed to present this court with a record adequate to review the claim. In this regard, the defendants assert that the plaintiff did not argue before the trial court that the burden of disproving fraudulent concealment should shift to the defendants, and that the

*Tyler, Cooper & Alcorn, LLP*, supra, 107. In support of this observation, our Supreme Court cited to *Hamilton* v. *Smith*, 773 F.2d 461, 468 (2d Cir. 1985), and *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 10 F. Sup. 2d 138, 145 (D. Conn. 1998), aff'd in part, vacated and remanded in part, 196 F.3d 409 (2d Cir. 1999).

record does not indicate whether the court concluded as a matter of law that the burden of proof should remain on the plaintiff to prove fraudulent concealment. In a footnote in their brief, the defendants stated that they do not waive their arguments, raised before the trial court, that Walsh's expert opinion is inadmissible and that a tax return preparer is not a fiduciary.

As a preliminary matter, we reject the defendants' argument that this court should not reach the merits of the plaintiff's claim. Authority in support of the legal principles upon which the plaintiff relies in regard to the burden shifting claim was available to the trial court at the time that it rendered its decision. The court was presented with a motion for summary judgment, a motion that required the court to determine whether the defendants were entitled to judgment in their favor in the absence of a full trial. See Practice Book § 17-44. The court's decision on a motion for summary judgment is a legal determination; see, e.g., *Caffery* v. *Stillman*, 79 Conn. App. 192, 195, 829 A.2d 881 (2003); and the court is presumed to know the law and apply it correctly to its legal determinations. See, e.g., *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust*, 58 Conn. App. 45, 54, 752 A.2d 65 ("[j]udges are presumed to know the law . . . and to apply it correctly" [internal quotation marks omitted]), cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). Furthermore, the court's decision in rendering summary judgment encompassed conclusions of law, not findings of fact, and the record adequately reveals the basis of the court's decision.

Having reviewed the appellate briefs and arguments of the parties, this court determined that the issue of whether the plaintiff presented sufficient evidence to establish that a genuine issue of material fact existed as to whether the defendants had a fiduciary relationship with the plaintiff was inextricably intertwined with

the burden shifting issue at the center of this appeal. That is, absent evidence to support a finding that a fiduciary relationship existed between the parties, the plaintiff's claim of error necessarily fails. Because the parties did not address this issue fully in their initial submissions and arguments before this court, we ordered the parties to submit supplemental briefs related to the fiduciary issue in the interest of affording the parties a full opportunity to be heard.[3] Subsequently,

[3] This court's order, dated May 24, 2012, stated: "Having reviewed the briefs and record, the court considers the burden shifting issue addressed in the briefs of the parties as inextricably intertwined with the trial court's determination that the plaintiff submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff. Therefore, counsel are hereby sua sponte ordered to file simultaneous supplemental briefs of no more than ten pages within two weeks of issuance of notice of this order addressing the following issues:

"Did the trial court properly determine as a matter of law by motion for summary judgment that the plaintiff submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff?

"If the answer to this question is no, then does General Statutes [§] 52-595 apply?

"Judge Lavine disagrees with the need for the order of supplemental briefs in this case and would decide the appeal on the basis of the issues as presented by the parties."

The plaintiff presents this court with a burden shifting claim that, by any measure, is wholly dependent on the existence of a fiduciary relationship between the parties. The issue of whether a fiduciary relationship existed was heavily debated at the summary judgment hearing and ultimately resolved by the court. In his initial appellate briefs, the plaintiff merely treated the issue as being settled by the trial court in his favor. In their initial brief, the defendants unambiguously, but in conclusory fashion, reiterated the argument that they advanced before the trial court, which was "that a tax return preparer is *not* a fiduciary." (Emphasis in original.)

Thus, the fiduciary relationship issue has not been raised sua sponte by this court, as it was raised before the trial court and on appeal before this court. It was, however, not fully analyzed in the defendants' brief. Under these circumstances, in which we deem the issue raised by the defendant (appellee) to be inextricably intertwined with the issue raised by the plaintiff (appellant) on appeal, and in the interest of affording the parties a full opportunity to brief the issue adequately, we issued our supplemental briefing order. We are mindful that "this court is not an advocate for any party"; *State* v. *Tocco*, 120 Conn. App. 768, 786, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010); and that adequate briefing is a prerequisite to

the parties submitted supplemental briefs in accordance with our order. The plaintiff argued that there was sufficient evidence to support a finding that a fiduciary relationship existed. The defendants argued that such evidence was lacking.

Before turning to that issue, we set forth our familiar standard of review. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the non-moving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue.

appellate review. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008). Nonetheless, our case law reflects that an appellate court, in its sound discretion, may order supplemental briefing related to issues that are relevant to the disposition of an appeal, but are not adequately addressed in the parties' initial briefs. See, e.g., *In re Joseph W.*, 301 Conn. 245, 255, 21 A.3d 723 (2011); *State* v. *Campbell*, 300 Conn. 368, 374, 13 A.3d 661 (2011); *State* v. *Oquendo*, 223 Conn. 635, 657, 613 A.2d 1300 (1992); *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 132 Conn. App. 85, 94, 30 A.3d 38 (2011), cert. granted on other grounds, 303 Conn. 923, 34 A.3d 395 (2012); *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 117 Conn. App. 612, 615, 980 A.2d 354 (2009); *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 491, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008); *Chairman, Board of Education* v. *Freedom of Information Commission*, 60 Conn. App. 584, 587, 760 A.2d 534 (2000); *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 425 n.6, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, 520 U.S. 1213, 117 S. Ct. 1699, 137 L. Ed. 2d 825 (1997).

Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

"Summary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant the defendant's motion for summary judgment is plenary. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In order for a motion for summary judgment to be granted properly, the moving party must demonstrate that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition [must] . . . be on evidence which a jury would not be at liberty to disbelieve and . . . where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the [summary judgment]." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Twenty-First Century Ins. Co.*, 301 Conn. 657, 661–62, 21 A.3d 816 (2011).

Having reviewed the submissions of the parties, there does not appear to be any dispute that the defendants, as the parties moving for summary judgment, demonstrated that there does not exist a genuine issue of material fact as to whether the plaintiff's action is untimely under the three year statute of limitations codified in § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three

years from the date of the act or omission complained of." In accordance with our well established summary judgment jurisprudence, the burden shifted to the plaintiff, as the party opposing summary judgment, to demonstrate the existence of some disputed factual issue that was material to the proper disposition of the action. *Bonington* v. *Westport*, supra, 297 Conn. 305. In opposing summary judgment and the application of § 52-577, the plaintiff alleged that the fraudulent concealment statute applied. Thus, the plaintiff bore the burden of presenting a factual predicate, raising a genuine issue of material fact, that the defendants fraudulently concealed his causes of action for the purpose of delaying the filing of the plaintiff's lawsuit. See, e.g., *Flannery* v. *Singer Asset Finance Co., LLC*, 128 Conn. App. 507, 516–18, 17 A.3d 509, cert. granted on other grounds, 302 Conn. 902, 23 A.3d 1242 (2011).

As we turn to the application of the fraudulent concealment statute, there does not appear to be any dispute that the court correctly determined that the plaintiff did not demonstrate the existence of a genuine issue of material fact because he failed to submit evidence to satisfy all of the elements of the statute.[4] The plaintiff does not argue on appeal that he presented evidence to satisfy the statute. Rather, the plaintiff argues that, because he submitted sufficient evidence to establish that a fiduciary relationship existed, the defendants bore the burden of demonstrating the absence of facts sufficient to satisfy the elements of fraudulent concealment.

---

[4] As stated previously in this opinion, to prove fraudulent concealment, a plaintiff must prove that the person concealing an action "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff['s] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the plaintiff['s] part in filing a complaint on [the] cause of action." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 105. Fraudulent concealment must be proven by "clear, precise, and unequivocal evidence." Id.

The law does not provide a bright line test for determining whether a fiduciary relationship exists, yet courts look to well established principles that are the hallmark of such relationships. Our Supreme Court has stated that "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . We have not, however, defined that relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other. . . . [U]nder our case law, the fiduciary relationship is not singular. The relationship between sophisticated partners in a business venture may differ from the relationship involving lay people who are wholly dependent upon the expertise of a fiduciary. Fiduciaries appear in a variety of forms, including agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians. [E]quity has carefully refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations." (Citations omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 281 Conn. 108–109.

"Although this court has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . we have recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary." (Citations omitted;

internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 640, 804 A.2d 180 (2002). "The fact that one party trusts another is not dispositive of whether a fiduciary relationship exists . . . rather, proof of a fiduciary duty requires an evidentiary showing of a unique degree of trust and confidence between the parties such that the [defendant] undertook to act primarily for the benefit of the plaintiff." (Citation omitted; internal quotation marks omitted.) *Golek* v. *Saint Mary's Hospital, Inc.*, 133 Conn. App. 182, 197, 34 A.3d 452 (2012).

"Professional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty. Although an attorney-client relationship imposes a fiduciary duty on the attorney . . . not every instance of professional negligence results in a breach of that fiduciary duty. . . . Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." (Citations omitted; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56–57, 717 A.2d 724 (1998).

As described previously in this opinion, the plaintiff's complaint in the present matter clearly was based on the defendants' duty to provide tax preparation services. The complaint focused on the specific conduct of the defendants' preparation of federal and state income tax returns for the plaintiff. The complaint alleged that Sax prepared such returns and "[failed] to exercise that degree of care and skill ordinarily and customarily provided by [c]ertified [p]ublic [a]ccountants" and "owed a duty to the [p]laintiff to provide tax preparation services . . . ." Similarly, the complaint alleged that the accounting firm "[failed] to exercise that degree of care and skill ordinarily and customarily provided by [c]ertified [p]ublic [a]ccountant firms in monitoring, approving, and issuing tax returns under

the firm name" and "owed a duty to the [p]laintiff to provide tax preparation services . . . ." There is no allegation in the complaint that the parties were in a fiduciary relationship. It was not until the plaintiff filed his amended reply, in the context of alleging fraudulent concealment, that he first alleged that a fiduciary relationship existed.

The defendants supported their motion for summary judgment with several documentary exhibits.[5] The defendants submitted an affidavit from Sax, in which he averred in relevant part that he prepared tax returns for the plaintiff between 2001 and 2005. Sax attached to his affidavit engagement letters relating to the preparation of the 2003, 2004 and 2005 tax returns. These letters were signed by the plaintiff. The letters state that they "confirm and specify the terms of [the accounting firm's] engagement with [the plaintiff] and . . . clarify the nature and extent of the services [the accounting firm] will provide." In relevant part, the letters state that the accounting firm will "[work] with [the plaintiff] and [advise him] regarding [his] income tax." The letters state that the accounting firm will prepare federal and state income tax returns, as requested. The letters state: "We will prepare your [tax return] from information which you will furnish us. We will not audit or otherwise verify the data you submit, although it may be necessary to ask you for clarification of some of the information." Further, the letters state that the plaintiff bore the burden of providing required information for the preparation of the returns and that the plaintiff had "the final responsibility for the income tax returns [and], therefore, [the plaintiff] should review them carefully before [signing] and [filing] them." Finally, the letters state

---

[5] "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Practice Book § 17-45.

that the accounting firm "will be available upon request to represent [the plaintiff in the event of a tax audit] and will render additional invoices for the time and expenses incurred."

The plaintiff submitted his own affidavit, in which he averred that he hired the defendants "to handle all of my tax work and to formulate and file my tax returns." The plaintiff averred that, for seventeen years (between 1989 and 2006), he employed the defendants "to handle all of my tax work and to formulate and file my tax returns." He averred that he believed that the defendants consistently were reporting his tax status as being engaged in the real estate business rather than as a real estate investor. Further, he averred: "I trusted them, I had confidence in them, I knew that, in tax matters, their knowledge, skill and expertise was clearly superior to mine, and I believed, at all times, that, in preparing my tax returns, they were proceeding in my best interests."

Walsh, in his affidavit submitted by the plaintiff, averred that he reviewed tax returns that were filed by the defendants for the plaintiff for the 2003, 2004 and 2005 tax years, at which time he discovered that the defendants erroneously treated the plaintiff as an individual engaged in the business of real estate and caused him to incur damages. Walsh averred that the plaintiff informed him that the defendants had not informed him that they changed his tax reporting status. In relevant part, he averred: "Based upon my knowledge and experience as a tax preparer, I can state that, in my professional opinion, given the lengthy time period of the relationship between [the plaintiff] and Sax, and the nature and scope of the tax services Sax and [the accounting firm] rendered, Sax and [the accounting firm] had a special, fiduciary relationship with [the plaintiff], and a fiduciary duty and responsibility, as [the plaintiff's] tax advisers and tax preparers, to disclose to

[the plaintiff] any decision on their part to materially change his tax status for reporting his . . . real estate investment income."

Having reviewed the pleadings, affidavits and other evidence submitted to the court, we conclude that the plaintiff failed to sustain his burden of demonstrating that a genuine issue of material fact existed as to whether the parties were in a fiduciary relationship. The submissions of the parties were in agreement concerning the type of services that the defendants provided to the plaintiff. The defendants were hired to prepare yearly federal and state income tax returns for the plaintiff, and this is the conduct at issue in the plaintiff's complaint. These returns were prepared based on information provided by the plaintiff and were filed with the plaintiff's final approval. There is no allegation, let alone evidence, that the defendants were hired to, or were expected to, undertake tasks such as managing the plaintiff's funds, advising the plaintiff with regard to investments or recommending financial transactions. The defendants were not hired to manage the plaintiff's personal or business affairs, but to prepare tax returns and provide advice concerning tax liability. There is no evidence that the relationship between the parties was characterized by anything more than the usual interactions between an accountant hired to prepare annual tax returns and his or her client. Cf. *Haas* v. *Haas*, 137 Conn. App. 424, 434–35, 48 A.3d 713 (2012) (undisputed that accountant owed his mother fiduciary duty in light of fact that he not only prepared and filed her tax returns but managed all her financial affairs and investments).

There is no evidence that the relationship between the plaintiff and the defendants, being no more than the relationship between a client and tax preparer, was characterized by a *unique* degree of trust and confidence. Nor is there evidence that the relationship

afforded the defendants an opportunity to represent the plaintiff's interests to third parties or to abuse trust and confidence reposed in them by the plaintiff. Simply put, insofar as the plaintiff hired the defendants to provide him with completed tax returns and to provide advice concerning the same, the relationship did not give rise to an inherently superior opportunity for the defendants to act contrary to the plaintiff's interests. The plaintiff relies heavily on the evidence that he had hired the defendants to prepare his tax returns for seventeen years. A long-term relationship between a professional and a client, however, does not necessarily become a fiduciary relationship simply because it is a long-term relationship. There was evidence that the plaintiff trusted and had confidence in the defendants in their preparation of tax returns and that he believed the defendants, in preparing his returns, were proceeding in his best interests. Also, he presented evidence that, with regard to tax matters, the defendants had, in comparison to him, superior knowledge and skill. This evidence, however, does not change the *nature of the services* that were provided by the defendants, *services that did not give rise to a fiduciary relationship.*

Absent evidence that the defendants undertook to render services of a fiduciary nature, the fact that the plaintiff believed that the defendants were proceeding in his best interests, and that he trusted and had confidence in their superior professional abilities, does not necessarily transmute a nonfiduciary relationship into a fiduciary relationship. Such facts merely would support a finding that the plaintiff had a long-term relationship with professionals that he trusted to render services according to the standards of their profession. To conclude otherwise would require a determination that a fiduciary relationship exists whenever one party rendering services possesses greater ability or skill in a particular area than the party who contracted for such

services, or whenever a party contracting for professional services trusts the party to render such services and to act in its best interest. In other words, such reasoning would have the absurd effect of transforming in the eyes of the law virtually every agreement to provide professional services into a fiduciary relationship. Having considered the evidence in the light most favorable to the plaintiff and in accordance with the authorities already set forth in this opinion; see *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 108–109; we conclude that the plaintiff did not present evidence of a fiduciary relationship.[6]

---

[6] The defendants argue that Walsh's opinions concerning the existence and breach of a fiduciary duty are purely legal in nature, "are meaningless and inappropriate" and "should be disregarded in [their] entirety." Walsh averred that a fiduciary relationship existed, but we are not persuaded that his opinion, either viewed in isolation or in conjunction with all of the other materials submitted by the parties, gave rise to a genuine issue of material fact. Although some of Walsh's averments are factual in nature, his opinion that a fiduciary duty exists is legal in nature. "[T]he determination of whether a [fiduciary] duty exists between individuals is a question of law." (Internal quotation marks omitted.) *Biller Associates* v. *Peterken*, 269 Conn. 716, 721, 849 A.2d 847 (2004). The United States District Court for the District of Connecticut, in a highly persuasive analysis, observed that "[t]he fact that the existence of a fiduciary duty . . . turns on the facts of the case does not render the question one of fact rather than law." *Bass ex rel. Bass* v. *Miss Porter's School*, 738 F. Sup. 2d 307, 330 (D. Conn. 2010).

The issue of law before this court, in evaluating whether the evidence sufficiently demonstrates that a fiduciary relationship exists, requires that we examine the scope of the parties' relationship and the obligations of that relationship. The resolution of the fiduciary issue inherently depends upon a correct view of the law concerning fiduciaries. As discussed previously, a genuine issue of material fact exists only if the evidence, viewed in the light most favorable to the plaintiff, supported a finding that the relationship between the parties was characterized by the unique degree of trust and confidence required to establish a fiduciary relationship.

Thus, this court's role in resolving this issue of law is not to determine whether the plaintiff submitted evidence of *any* nature with regard to a fiduciary relationship, but whether the evidence presented was of such a nature that it gave rise to a genuine issue of material fact that the parties' relationship was characterized by a unique degree of trust and confidence. We have reviewed the evidence in the light most favorable to the plaintiff and, as a matter of law and for all of the reasons discussed in this opinion, conclude that it does not permit a finding that such a relationship existed.

There is no Connecticut appellate authority that addresses whether an accountant who performs only tax preparation services is a fiduciary.[7] The defendants have brought to our attention trial court authority, *Pacheco* v. *Soto*, Superior Court, judicial district of Fairfield, Docket No. CV-03-0407184 S (August 18, 2004), that is consistent with our reasoning that a defendant who provides a plaintiff with only tax preparation services is not a fiduciary. In *Pacheco*, the trial court, denying an application for a prejudgment remedy, evaluated a count of a civil complaint sounding in breach of fiduciary duty. Id. The court reasoned: "As to count three, breach of fiduciary duty, the most the plaintiff has established was that the defendant was her tax preparer in the past. She did not establish that this past relationship constituted any more than interactions any tax preparer or insurance agent would have with any client. She failed to present any facts supporting a relationship that involved a unique degree of trust and confidence. The plaintiff failed to establish probable cause that the defendant violated a fiduciary duty because he did not owe one." Id.

Although Connecticut case law sufficiently guides our analysis, we look favorably on decisions from sev-

Walsh's contrary opinion is evidence of his opinion on the matter, but it does not resolve the legal issue before this court. Because the plaintiff bore the burden of setting forth a factual predicate to support a finding that a fiduciary relationship existed, rather than mere opinion evidence, Walsh's affidavit does not give rise to a genuine issue of material fact.

[7] We note that in a concurring and dissenting opinion in *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 99, 752 A.2d 1037 (1999), Justice Berdon noted favorably the trial court's finding that "[w]hether in his capacity as a certified public accountant or in the broader confidant capacity that [the defendant] Federico served in as vice president and heir apparent at [the plaintiff company] . . . a fiduciary relationship obviously existed and [the defendant Federico] breached the duty of loyalty to the plaintiffs." Because, as the majority opinion in *Elm City Cheese Co.* observed, "[the duties of the defendant Federico] went beyond typical accounting work" and, in fact, the defendant Federico "was placed in charge of operations and was given the authority to make decisions" for the plaintiff company; id., 62; *Elm City Cheese Co.* is patently distinguishable from the present case.

eral federal courts holding that, generally, an accountant-client relationship is not fiduciary in nature. See, e.g., *RTR Technologies, Inc.* v. *Helming*, 815 F. Sup. 2d 411, 433 (D. Mass. 2011) ("Generally, an accountant-client relationship does not create [fiduciary] obligations. . . . The weight of legal precedent—and common sense—stands for the proposition that an accountant takes on fiduciary obligations only where he or she recommend[s] transactions, structure[s] deals, and provide[s] investment advice . . . such that he or she exercises some managerial control over the assets in question." [Citation omitted; internal quotation marks omitted.]); *Peterson* v. *H & R Block Tax Services, Inc.*, 971 F. Sup. 1204, 1214 (N.D. Ill. 1997) ("[The defendant] is alleged to have done nothing more than perform a basic accounting function—preparing tax returns and advising its customers on the process. . . . Indeed, to render an accountant liable as a fiduciary, the plaintiff must allege that he either provided investment advice, recommended complex financial transactions, structured deals . . . or performed audits . . . ." [Citations omitted.]); *Fleet National Bank* v. *H & D Entertainment, Inc.*, 926 F. Sup. 226, 242 (D. Mass.) ("[w]here an accountant merely performs basic accounting functions, no fiduciary relationship is created"), aff'd, 96 F.3d 532 (1st Cir. 1996), cert. denied, 520 U.S. 1155, 117 S. Ct. 1335, 137 L. Ed. 2d 495 (1997); *Stainton* v. *Tarantino*, 637 F. Sup. 1051, 1066 (E.D. Pa. 1986) ("An accountant is not automatically a fiduciary for his client. . . . In business relationships, a confidential relationship arises only if parties surrender substantial control over some portion of their business affairs to another." [Citation omitted.]).

Likewise, there is pertinent and persuasive authority from other state courts on the issue.[8] See, e.g., *Congre-*

---

[8] The plaintiff, in his supplemental brief, urges us to follow the reasoning of a Pennsylvania Superior Court decision, *Basile* v. *H & R Block, Inc.*, 777 A.2d 95 (Pa. Super. 2001). In *Basile*, the court held that the plaintiff class

*gation of the Passion* v. *Touche Ross & Co.*, 224 Ill. App. 3d 559, 590, 586 N.E.2d 600 (1991) (accountant's ability to exercise influence or domination and control over investment decisions of client relevant to evaluating whether accountant was fiduciary), aff'd, 159 Ill. 2d 137, 636 N.E.2d 503, cert. denied, 513 U.S. 947, 115 S. Ct. 358, 130 L. Ed. 2d 312 (1994); *Brown-Wilbert, Inc.* v. *Copeland Buhl & Co.*, Minnesota Court of Appeals, Docket No. A07-2762 (December 30, 2008) ("Courts do not generally regard the accountant-client relationship as a fiduciary one. . . . Thus, in order to show a fiduciary relationship, [a plaintiff] must show more than the standard accountant-client relationship . . . ." [Citation omitted; internal quotation marks omitted.]), review denied, Minnesota Supreme Court (March 17, 2009); *Friedman* v. *Anderson*, 23 App. Div. 3d 163, 166, 803 N.Y.S.2d 514 (2005) ("Generally, there is no fiduciary relationship between an accountant and his client . . . . A conventional business relationship, without more, does not become a fiduciary relationship by mere allegation . . . ." [Citations omitted; internal quotation marks omitted.]); *Harrold* v. *Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914 (2002) ("[w]e have found no case stating that the relationship between accountant and client is per se fiduciary in nature"); *Squyres* v. *Chris-*

---

of taxpayers presented sufficient evidence to demonstrate that the defendant mass-market tax preparer and the plaintiff were in a fiduciary relationship. Id., 103. The court, considering the matter at the summary judgment stage, stated that it would review the record to determine whether it contained evidence of either "overmastering influence [by the defendant]" or "weakness, dependence or trust [by the plaintiff]." (Internal quotation marks omitted.) Id., 101. The court reasoned that a jury reasonably could find that "[the defendant] occupied a position of substantial strength which, relative to the pronounced intellectual and economic weakness of the [p]laintiffs, presented [the defendant] with the opportunity to abuse the [p]laintiffs' trust for its own gain." Id., 106. Recognizing that the fiduciary inquiry is highly case specific, and in light of the many factual differences between the litigants in *Basile* and those in the present case, we are not persuaded by the result reached in that case.

*tian*, 253 S.W.2d 470, 471–72 (Tex. Civ. App. 1952) (no fiduciary relationship between accountant and client when client merely had confidence in accountant who handled general accounting business); *Allen Realty Corp.* v. *Holbert*, 227 Va. 441, 447, 318 S.E.2d 592 (1984) (observing that accountant may be fiduciary because money or property has been entrusted to him).[9]

Having concluded that the evidence did not support a finding that a fiduciary relationship existed, the plaintiff's burden shifting argument fails. Because the court concluded that the plaintiff did not present evidence to demonstrate all of the elements of fraudulent concealment, and such conclusion is not challenged on appeal, we conclude that the court, applying the statute of limitations, properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

LAVINE, J., dissenting. I respectfully dissent from the majority opinion because it is in derogation of our rules of practice regarding motions for summary judgment; see Practice Book § 17-44 et seq.; and misapprehends the substantive law of fraudulent concealment. See General Statutes § 52-595. At trial, the summary judgment issue was framed by the pleadings, particularly the special defense and the amended reply thereto. The burden was squarely on the defendants, Larry Sax and Cohen, Burger, Schwartz & Sax, LLC (firm), to demonstrate that there was no genuine issue of material fact

[9] Cf. *Holloway* v. *Faw, Casson & Co.*, 319 Md. 324, 336, 572 A.2d 510 (1990) ("[t]here is a fiduciary relationship between accountant and client and that feature distinguishes the accounting profession from a typical commercial business").

regarding a fiduciary relationship with the plaintiff, Arthur Iacurci. In the plaintiff's opposition to the motion for summary judgment, the trial court found that the plaintiff successfully demonstrated that there was a fiduciary relationship between the parties, but improperly placed the burden on the plaintiff to demonstrate that the defendants were guilty of fraudulent concealment. The majority, however, has reached out to consider an issue not raised by the parties on appeal,[1] has made a factual determination in the absence of any supporting evidence, has misapplied the law of fraudulent concealment and consequently has deprived the plaintiff of his right to litigate a material issue in this case. I would reverse the summary judgment rendered by the trial court and remand the matter for further proceedings.

I

FACTS

The following facts and procedural history are relevant to the issue raised by the plaintiff on appeal. The plaintiff commenced this action on November 10, 2009, alleging that the defendants were guilty of negligence and accounting malpractice for making a material change in his income tax filing status without disclosing that fact and its implications to him. More specifically, the plaintiff alleged that, for a number of years, Sax had prepared tax returns for him and Barbara Iacurci[2] on behalf of the firm. For the tax years 1999 through 2002, Sax "portrayed" the plaintiff as a real estate investor when filing his tax returns. For the tax years 2003

---

[1] On appeal, the plaintiff claimed that the court erred in granting the defendants' motion for summary judgment and argued that, under Connecticut law, it was the defendants' burden to prove the absence of facts necessary to establish fraudulent concealment.

[2] Barbara Iacurci, the plaintiff's wife, is not a party to this action.

through 2005, Sax "portrayed" the plaintiff as an individual engaged in the business of real estate. The plaintiff alleged that Sax arbitrarily changed his tax filing status, which resulted in the plaintiff's having to pay more taxes than he had previously. The plaintiff alleged that in 2007 he "disassociated professionally" from the defendants and retained another accounting firm to prepare his tax returns. The new firm noted the change in the plaintiff's tax filing status and filed amended tax returns for the years 2003 through 2005 indicating that the plaintiff's tax filing status was that of a real estate investor. Following an audit, the Internal Revenue Service upheld the plaintiff's filing status as a real estate investor. The plaintiff alleged against both Sax and the firm one count of malpractice and one count of negligence.

On December 31, 2009, the defendants answered the complaint, denying its material allegations, and alleged a special defense that the action was barred by the statute of limitations, General Statutes § 52-577.[3] The plaintiff filed a reply denying the special defense on January 27, 2010.

On June 11, 2010, the defendants filed a motion for summary judgment on the ground that the plaintiff's claims are time barred under § 52-577. The defendants submitted a memorandum of law in support of the motion for summary judgment,[4] Sax's affidavit and copies of the engagement letters signed by the parties. The defendants claimed that summary judgment should be

---

[3] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[4] In their memorandum of law in support of their motion for summary judgment, the defendants argued that the action was untimely and that the continuing representation doctrine does not apply to accounting malpractice actions.

rendered in their favor because their last act performed on behalf of the plaintiff, filing his 2005 income tax return, was completed on April 17, 2006, and the plaintiff's action was not commenced until more than three years later. The plaintiff's action, the defendants contended, therefore was barred by § 52-577.

On July 11, 2010, the plaintiff filed an amended reply to the defendants' special defense,[5] alleging that there was a fiduciary relationship between the parties and that the statute of limitations was tolled by operation of the fraudulent concealment statute, General Statutes § 52-595.[6] On July 28, 2011, the plaintiff filed an objection to the motion for summary judgment on the ground that genuine issues of material fact exist as to whether § 52-595 applies to toll the running of § 52-577. In support of his objection, the plaintiff filed a memorandum of law,[7] his

[5] The plaintiff's amended reply alleges: "The plaintiff hereby denies the applicability of . . . § 52-577 as a bar to his claims in this case, and hereby asserts the applicability of the tolling provisions of . . . § 52-595, Connecticut's fraudulent concealment statute, in that: (a) at all times, a fiduciary relationship existed between the plaintiff and the defendants; (b) the defendants never disclosed to the plaintiff the specific acts on the part of the defendants which are alleged in plaintiff's complaint to constitute negligence; (c) at all times, the defendants had a fiduciary duty to make such disclosure to the plaintiff; and (d) said negligent acts of the defendants were not discovered by the plaintiff until late January of 2007, after he had retained a new tax specialist to replace the defendants."

[6] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[7] In his memorandum of law in opposition to the defendants' motion for summary judgment, the plaintiff argued that he and the defendants had a fiduciary relationship and cited *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 108, 912 A.2d 1019 (2007); *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996); *Harper* v. *Adametz*, 142 Conn. 218, 225, 113 A.2d 136 (1955); *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 989 F. Sup. 110, 117 (D. Conn. 1997).

own affidavit[8] and an affidavit from Robert Walsh,[9] a
licensed financial planner.[10]

[8] The plaintiff attested, in part, that for seventeen years he employed the
defendants "to handle all of [his] tax work and to formulate and file [his]
tax returns." Prior to 2002, the defendants utilized tax form schedule D to
report his gains and losses on Florida real estate investments. For the tax
years 2003 through 2005, the plaintiff believed that the defendants were
"still reporting [his] income and losses on real estate investments as capital
gains . . . ." The plaintiff further attested that in 2007, he terminated his
relationship with the defendants and "hired new tax specialists to handle
[his] taxes." After hiring his new tax specialists, the plaintiff discovered that
the defendants "had materially changed the way they reported [his] tax
status, reporting [his] real estate investment gains and losses as ordinary
income on [tax form] [s]chedule C, rather than as capital gains on [s]chedule
D . . . ." (Internal quotation marks omitted.) The plaintiff further attested
that the defendants never disclosed to him the change in his tax filing status
for the years 2003 through 2005. The plaintiff also attested that he trusted
the defendants, he "knew that, in tax matters, their knowledge, skill and
expertise was clearly superior to [his], and [he] believed, at all times, that,
in preparing [his] tax returns, they were proceeding in [his] best interests."
Moreover, he attested, if the defendants had disclosed the change in the
plaintiff's tax filing status and "the attendant implications of such a change,
[he] would never have agreed to have [the defendants] handle [his] tax
affairs and file [his] returns for the tax years 2003, 2004 and 2005." As a
result of the change in his tax filing status, the plaintiff "was required to
pay approximately $177,000.00 more in taxes over those three years than
[he] should have."

[9] Pursuant to Practice Book § 13-4, the plaintiff disclosed Walsh as an
expert witness expected to provide testimony as set forth in his affidavit.

[10] Walsh attested that he is a financial planner licensed in Connecticut
and for the past twelve years has been "engaged in the business of providing
to clients advice and assistance in financial and tax matters." Part of his
business includes the preparation of "tax returns for clients." He prepares,
on average, "thirteen hundred tax returns per year."

He attested that he has personal knowledge of the facts in the affidavit.
The plaintiff hired him in January, 2007, to prepare his 2006 tax return. At
that time, he reviewed the tax returns prepared for the plaintiff by the
defendants. Walsh attested that he noted an error in the "manner in which
[the defendants] had reported [the plaintiff's] Florida real estate investment
income for the tax years" 2003 through 2005. The defendants utilized sched-
ule C, rather than schedule D, to report income from the plaintiff's real
estate investments. Walsh opined that the plaintiff's income from his Florida
real estate investments should have been reported as capital gains, rather
than as ordinary income. Walsh calculated that the plaintiff had "grossly
overpaid his taxes for the tax years, 2003, 2004 and 2005 in the total approxi-
mate amount of $177,000.00." The plaintiff informed Walsh that in prior
years the defendants had reported his income as capital gains and that they
did not inform him that they had changed his tax reporting status from that

On October 1, 2010, the defendants filed a reply to the plaintiff's objection to summary judgment, arguing that § 52-595 does not apply to claims of accounting malpractice and negligence, and, if it does, the plaintiff has not presented facts necessary to trigger tolling of § 52-577. The defendants, however, presented no evidence to counter Walsh's attestation that the defendants owed the plaintiff a fiduciary duty to disclose the change in his tax returns.

Counsel for the parties appeared before the court at short calendar on January 3, 2011, to argue the defendants' motion for summary judgment.[11] Counsel for the defendants argued that portions of Walsh's affidavit were not admissible as evidence and that the plaintiff had not established the three elements necessary to prove fraudulent concealment as set forth in *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, 912 A.2d 1019 (2007).[12] The defendants

of "real estate investor to that of an individual engaged in the real estate business . . . ." (Internal quotation marks omitted.) Walsh opined on the basis of his knowledge and experience as a tax preparer, "given the lengthy time period of the relationship between [the plaintiff] and Sax, and the nature and scope of the tax services [the defendants] rendered, [the defendants] had a special, fiduciary relationship with [the plaintiff], and a fiduciary duty and responsibility, as [the plaintiff's] tax advisers and tax preparers, to disclose to [the plaintiff] any decision on their part to materially change his tax status for reporting his Florida real estate investment income." Walsh also attested that by not disclosing the change in the plaintiff's tax status, "and the likely adverse effects of such change, [the defendants] breached a fiduciary duty they owed to [the plaintiff] to make full disclosure of material changes in their tax reporting methods."

[11] In its memorandum of decision, the court stated that the defendants did not object to the plaintiff's amended reply to their special defense. Pursuant to Practice Book § 10-60, the court ruled that "the 'Amended Reply' is deemed consented to and is the operative pleading."

[12] Under our case law, to prove fraudulent concealment, the plaintiff must show that the defendants "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff['s] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the plaintiff['s] part in filing a complaint on [the] cause of action. *Bartone* v. *Robert L. Day Co.*, 232 Conn. 527, [533], 656 A.2d 221 (1995)." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 105.

argued, but again presented no evidence, that they did not owe the plaintiff a fiduciary duty. In response to that legal argument, counsel for the plaintiff quoted from our Supreme Court's decision in *Falls Church Group, Ltd.*: "We have not, however, defined that relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) Id., 108.

The court issued a memorandum of decision granting the defendants' motion for summary judgment on March 25, 2001. The court first addressed the defendants' objection to Walsh's affidavit. The court determined that Walsh was an expert and that his affidavit provided information that would be useful to a jury, as "[t]he details of tax preparation for real estate investors falls beyond the ken of the average juror . . . ."[13]

The court then framed the issue before it as follows: "The plaintiff objects to the motion for summary judgment on the ground that there is a genuine issue of material fact as to whether the tolling provision of § 52-595 applies. The plaintiff argues in his memorandum in opposition that § 52-577 does not govern here. He argues that § 52-595 applies to this case because it involves: '(1) professional negligence arising in the context of a fiduciary relationship; (2) nondisclosure by the defendants of their negligent acts when the defendants, under the circumstances, had a clear fiduciary duty to make such disclosure; and (3) no knowledge or discovery of the defendants' undisclosed negligent acts by the

---

[13] The defendants did not raise that issue as an alternate ground on which to affirm the judgment of the trial court. See Practice Book § 63-4 (a) (1) (A). As the majority correctly notes, the issue of whether the court properly relied on Walsh's affidavit is not before this court.

plaintiff until late January, 2007 . . . .' In the defendants' reply memorandum, they respond that § 52-595 does not apply in this situation, and if it did, the plaintiff has not presented the facts necessary to trigger tolling of this statute."

As to the substance of the defendants' motion for summary judgment, the court found that there was no genuine issue of material fact that the plaintiff had not commenced the action within three years of the last act completed by the defendants on the plaintiff's behalf. That is, the plaintiff had not commenced the action within three years of the defendants' filing of the plaintiff's 2005 tax returns in April, 2006.

The court then erroneously concluded that the burden shifted to the plaintiff to demonstrate that an issue of fact exists as to whether § 52-595, the fraudulent concealment statute, applies in this case to toll the applicable statute of limitations. The court cited the elements of fraudulent concealment as set forth in *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 281 Conn. 105. See footnote 12 of this opinion. The court found that the plaintiff had not met his burden to demonstrate that the defendants knew that the material change in the plaintiff's tax filing status was incorrect, that the plaintiff had overpaid his tax obligation or that he had a cause of action. It also found that the plaintiff had not demonstrated facts that the defendants delayed the plaintiff's filing of the action, that is, that the defendants kept information from him in order to delay the commencement of the lawsuit.

As to the element that the defendants intentionally concealed these facts from the plaintiff, the court stated, "our appellate courts '[have] not yet decided whether affirmative acts of concealment are always necessary to satisfy the requirements of . . . § 52-595.' *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn,*

*LLP*, supra, 281 Conn. 107. The Connecticut Supreme Court has recognized that federal case law exists 'suggesting that although fraudulent concealment generally requires an affirmative act of concealment, nondisclosure is sufficient *when the defendant has a fiduciary duty to disclose material facts.*' [Id.]" (Emphasis added.) The court also noted that our Supreme Court has not defined a fiduciary or confidential relationship " 'in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other.' [Id., 108.]"

The court concluded that the plaintiff had met his burden of creating a genuine issue of material fact as to one of the elements of fraudulent concealment. In his affidavit, the plaintiff attested that he relied on the defendants as tax experts with superior knowledge and skill when compared to his own knowledge of tax matters. He trusted the defendants to prepare his taxes for seventeen years. Walsh attested that the defendants owed the plaintiff a fiduciary duty and that the change in the plaintiff's tax filing status was a material fact that should have been disclosed. The court concluded, therefore, that the plaintiff had submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff and their failure to disclose his changed status on his tax returns as a breach of their duty to disclose material facts to the plaintiff.

The court found that the plaintiff had established that the defendants owed him a fiduciary duty, and, therefore, failure to disclose material facts satisfied the element of fraudulent concealment of intentionally concealing facts. The court found, however, that the plaintiff had not met his burden as to the other two elements

of fraudulent concealment.[14] He therefore failed to demonstrate a genuine issue of material fact as to whether § 52-595 tolls the statute of limitations, and the court granted the defendants' motion for summary judgment.

The plaintiff appealed, claiming that the court improperly placed the burden on him to demonstrate fraudulent concealment. The plaintiff relies on *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999). In their argument to this court, the defendants' sole response to the plaintiff's claim is that the claim is not reviewable because the plaintiff did not bring the *Martinelli* case to the attention of the court or specifically argue that it was the defendants' burden to prove the absence of intentional concealment by the defendants.[15] Following oral argument in this court, with my objecting, the majority sua sponte ordered the parties to submit supplemental briefs on the following issue: "Did the trial court properly determine as a matter of law by motion for summary judgment that the plaintiff submitted sufficient evidence to establish that the defendants had a fiduciary relationship with the plaintiff?"

## II

## SUMMARY JUDGMENT

"Summary judgment procedure is designed to dispose of actions in which there is no genuine issue as to any material fact." *Rathkopf* v. *Pearson*, 148 Conn. 260, 263, 170 A.2d 135 (1961). The well known procedure governing motions for summary judgment is set forth

---

[14] The court found that the plaintiff had not met his burden to demonstrate that the defendants knew of the plaintiff's cause of action and that they concealed it from the plaintiff for the purpose of delaying the bringing of a cause of action.

[15] The defendants did not brief the merits of the plaintiff's claim that the court improperly placed the burden of establishing facts regarding fraudulent concealment on him after concluding that there was a fiduciary relationship between him and the defendants.

in our rules of practice. "In any action, except administrative appeals . . . any party may move for a summary judgment . . . ." Practice Book § 17-44. "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . Any adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence." Practice Book § 17-44. "The standards governing [an appellate court's] review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, *the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law* . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Summary judgment may be granted where the claim is barred by the statute of limitations. . . .

"Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary

judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 800–801, 732 A.2d 207 (1999). The moving party must demonstrate that no genuine issue of material fact exists before the nonmoving party has the burden to show otherwise. *Rockwell* v. *Quintner*, 96 Conn. App. 221, 228, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006).

"The purpose of a complaint [or counterclaim] is to limit the issues at trial, and it is calculated to prevent surprise. . . . It must provide adequate notice of the facts claimed and the issues to be tried. . . . In order to surmount a motion for summary judgment, a party must demonstrate that there exists a genuine issue of material fact. . . . Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case. . . . To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244–45, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995). "The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) Id., 245.

"Equally well settled is that the trial court *does not sit as the trier of fact* when ruling on a motion for summary judgment. . . . [T]he trial court's function is

not to decide issues of material fact, but to *determine whether any such issues exist.*" (Emphasis added; internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996); see also *McColl* v. *Pataky*, 160 Conn. 457, 459, 280 A.2d 146 (1971).

## III

## ANALYSIS

On the basis of the law of summary judgment, and the pleadings and the evidence submitted by the parties with respect to the defendants' motion for summary judgment, I conclude that the court improperly granted the defendants' motion for summary judgment. The court found that Walsh was an expert witness whose testimony would assist a jury. See footnote 10 of this opinion. On appeal, the defendants have not challenged that determination. Although the plaintiff alleged that he had a fiduciary relationship with the defendants in his amended reply to the defendants' special defense, the defendants failed to present any evidence to raise a genuine issue of material fact as to the nature of the relationship between the parties. Because the defendants bore the burden to demonstrate the absence of material facts, that circumstance alone was sufficient for the court to deny the defendants' motion for summary judgment. "The party seeking summary judgment has the burden of showing the absence . . . [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . ." (Citation omitted; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, supra, 53 Conn. App. 800–801.

"[A]lthough fraudulent concealment generally requires an affirmative act of concealment, nondisclosure is sufficient when the defendant has a fiduciary duty to disclose material facts." (Internal quotation

marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 281 Conn. 107. The plaintiff attested in his affidavit that the defendants failed to inform him of the change in his tax filing status and its implications. In this case, the court failed to adhere to the rule that, if the plaintiff establishes the existence of a fiduciary relationship, it becomes "the defendant's burden to disprove that it breached its fiduciary duty, hence disproving that it fraudulently concealed plaintiff's cause of action." *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.,* 10 F. Sup. 2d 138, 144 (D. Conn. 1998), aff'd in part, vacated and remanded in part, 196 F.3d 409 (2d Cir. 1999).

Our Supreme Court has stated that rule repeatedly. "The Connecticut Supreme Court has recently reiterated its rule that where an allegation of fraud, self-dealing, or conflict of interest is made against a fiduciary, the burden shifts to the fiduciary to prove that it acted fairly . . . ." *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.,* supra, 196 F.3d 420, quoting *Murphy* v. *Wakelee,* 247 Conn. 396, 400, 721 A.2d 1181 (1998). The law with respect to the obligations of a fiduciary is well settled. "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham,* 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven,* 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). "Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, *the burden of proof shifts to the fiduciary*; and second, the

standard of proof is clear and convincing evidence." (Emphasis added; internal quotation marks omitted.) *Murphy* v. *Wakelee*, supra, 400.

Here, the court concluded that the plaintiff had demonstrated that the plaintiff and the defendants had a fiduciary relationship, but determined that the plaintiff had not met his burden to establish that the defendants had actual knowledge that changing the plaintiff's income tax filing status was incorrect, that the plaintiff had overpaid his tax obligation or suffered any injury or that the plaintiff had a cause of action, which information the defendants kept from him to delay the commencement of a cause of action.[16] Our law of fraudulent concealment does not place the burden on the plaintiff when the defendant is a fiduciary. I conclude that the court improperly placed the burden on the plaintiff to show an absence of material fact as to the elements of fraudulent concealment. The plaintiff's burden was to demonstrate a genuine issue of material fact.

The majority has taken the position that the plaintiff and the defendants did not have a fiduciary relationship. It is unclear to me how the majority reaches that conclusion on the record before us. Only the plaintiff presented evidence with respect to the nature of his relationship with the defendants. Our Supreme Court has stated, "under our case law, the fiduciary relationship is not singular. The relationship between sophisticated partners in a business venture may differ from the relationship involving lay people who are wholly dependent upon the expertise of a fiduciary. Fiduciaries appear in a variety of forms, including agents, partners,

---

[16] The only burden on the plaintiff was to demonstrate a genuine issue of material fact. "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995).

lawyers, directors, trustees, executors, receivers, bailees and guardians. [E]quity has carefully refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 281 Conn. 108–109.

Our Supreme Court "has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . [and it has] recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary." (Citations omitted; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000). The determination of a fiduciary relationship is fact specific and depends on the circumstances present in each case. "Rather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting . . . influence on the other. . . . *Dunham* v. *Dunham*, [supra, 204 Conn. 320], quoting *Harper* v. *Adametz*, 142 Conn. 218, 225, 113 A.2d 136 (1955)." (Internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 99, 752 A.2d 1037 (1999) (*Berdon, J.,* concurring in part and dissenting in part).

Whether there was a fiduciary relationship between the parties in this action is a question of fact to be determined by the trier of fact in light of all circumstances present. It is not one to be decided prematurely pursuant to a summary judgment motion. The plaintiff met his burden of demonstrating a genuine issue of material fact by means of his own affidavit and one from Walsh. The defendants presented no opposing evidence. In ruling on a motion for summary judgment,

the role of the trial court is to determine whether a genuine issue of material fact exists, not to decide such questions. See *Fleet Bank, N.A.* v. *Galluzzo*, 33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994). By the same rule, appellate courts should not decide questions of fact. *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 405 n.10, 973 A.2d 1229 (2009) (function of appellate court is to review findings of fact, not make factual findings). It is axiomatic that appellate courts do not decide questions of fact. "Appellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion." (Internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 483, 871 A.2d 981 (2005). Here, the majority has not only made a factual determination, but it also has overturned the finding of the trial court that the defendants owed the plaintiff a fiduciary duty that was supported by Walsh's affidavit, in the absence of any contrary evidence whatever. An appellate court "may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken." (Internal quotation marks omitted.) *Korsgren* v. *Jones*, 108 Conn. App. 521, 526, 948 A.2d 358 (2008). In this case, the court had two affidavits on which it could, and did, properly rely.

I also take issue with the majority opinion because it has injected into this case an issue not raised by the parties on appeal. The issue stated by the plaintiff appellant is "whether the trial court erred in granting the defendants' motion for summary judgment . . . ." The plaintiff's claim is based on the single proposition that the court erred when it failed to impose on the defendants the burden to prove the absence of facts necessary to establish fraudulent concealment. The plaintiff argued that the court misallocated the burden by wrongly placing it on him. The shifting of the burden,

the plaintiff contends, is reversible error. He raised no other argument. Equally important, the defendants did not claim that the court improperly determined that the plaintiff had met his burden of demonstrating that they were fiduciaries. Our Supreme Court stated quite recently that "while the burden at issue in the present case concerns adjudication at the trial level, it is at the very least clear that this court will not make arguments on behalf of parties that have declined to make any." *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 337, 50 A.3d 841 (2012).

The majority's decision creates the unfortunate impression that this court may ignore the limited framework within which evidence is presented in support of, or in opposition to, summary judgment, and retroactively vitiates a perfectly reasonable determination by the court that the Walsh affidavit should be considered. An appeal from a rendering of summary judgment provides this court with the opportunity to determine whether a trial court properly determined that no genuine issue of material fact exists that supports proceeding to trial; Practice Book § 17-49; not to engage in a wholesale review of every ruling made by a judge that another judge might have decided differently. Evidence submitted at the summary judgment stage is limited and fragmentary in light of the circumscribed nature of the proceeding. Rulings made are narrow and must be viewed in their procedural context. They do not supplant the need for a full trial. Attorneys do not submit everything available to them at the summary judgment stage; they submit only sufficient evidence to attempt to demonstrate to the court that a genuine issue of material fact exists.

A party's right to a full trial after fragmentary evidence is presented in opposition to summary judgment was made clear by our Supreme Court in *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*,

supra, 306 Conn. 304. "In reaching its conclusion, the trial court reasoned that the plaintiff [physician] had presented sufficient information to demonstrate material issues of fact concerning whether the [defendant hospital's] actions culminating in the summary suspension had satisfied [42 U.S.C. § 11112 (a) (2) and (3)], and that the defendant [hospital] had failed to present evidence establishing immunity under [42 U.S.C. § 11112 (c)]. These determinations, however, were made without the benefit of the evidence subsequently presented at trial and therefore offer little insight into the question of whether the defendant [hospital] was entitled to judgment as a matter of law on the basis of all the evidence presented in the case." Id., 337–38.

At the short calendar argument in this case, counsel for the defendants argued that no fiduciary relationship existed, but only the plaintiff submitted evidence to support the existence of a fiduciary relationship. I conclude that, on the limited record before it and the complete absence of any evidence whatever rebutting the Walsh affidavit, the court reasonably could have come to only one conclusion: that a genuine issue of material fact existed as to whether a fiduciary relationship existed.

When litigants bring an appeal, except in the most unusual and compelling circumstances, they are entitled to have the court decide the case based on the issues as defined and presented by them and in accordance with the normal rules of procedure. A high degree of judicial restraint is necessary. In this case, I believe that restraint is lacking.

For the foregoing reasons, I respectfully dissent. I would decide the case based on the issue originally presented in this appeal. I would reverse the judgment of the trial court and remand the case for further proceedings.