# SUZANNE NOWACKI *v.* MICHAEL NOWACKI
## (AC 34041)

Alvord, Bear and Peters, Js.

Argued March 21—officially released July 30, 2013

*John R. Williams*, with whom, on the brief, was *Michael J. Nowacki*, self-represented, for the appellant (defendant).

*Kevin F. Collins*, for the appellee (plaintiff).

*Veronica E. Reich*, for the minor children.

*Opinion*

PER CURIAM. The defendant, Michael Nowacki, appeals from the decision of the trial court granting the postjudgment motion to modify custody filed by the plaintiff, Suzanne Nowacki.[1] On appeal, the defendant claims that the court improperly (1) denied his applications for the issuance of subpoenas for material witnesses to testify at a hearing held on May 19, 2011, thereby depriving him of the right to present a defense

---

[1] The plaintiff is now known as Suzanne Sullivan.

as a self-represented party,[2] (2) deprived him of his constitutional right to appear in person for court proceedings held on April 15 and May 10, 2011, and (3) delegated its judicial power to a nonjudicial agency. The fourth "claim" in the defendant's brief is his request that this court issue a ruling on whether the judiciary possessed constitutional authority to adopt Practice Book §§ 25-60 and 25-60A. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The court, *Tierney, J.*, dissolved the parties' twelve year marriage on June 29, 2005. The judgment of dissolution incorporated by reference the terms of the parties' separation agreement, which provided for joint legal and physical custody of the two minor children with a " 'one week on, one week off' " parenting schedule. On February 28, 2011, the plaintiff filed a postjudgment motion for modification of the custody orders, requesting that the court award her sole legal and physical custody of the children with limited supervised visitation with the defendant. An attorney for the minor children, Veronica Reich, already had been appointed in connection with previously filed motions. Reich and the parties proceeded to file several additional motions concerning custody, visitation and related matters. In March, 2011, the court granted the parties' motions to appoint a guardian ad litem as additional protection for the interests of the children.

On April 7, 2011, the court, *Calmar, J.*, notified the parties that a hearing would be held on April 15, 2011,

---

[2] The defendant represented himself during the trial court proceedings and at the time that he appealed from the trial court's October 25, 2011 decision. He continued to represent himself at the time that he filed his initial appellate brief. The issues on appeal, as set forth in this opinion, are as framed in his brief. On June 15, 2012, Attorney John Williams filed an appearance in addition to the appearance of the defendant already on file. Williams filed the reply brief and argued the appeal before this court.

to address various outstanding motions. On April 13, 2011, the defendant was found in summary contempt by the court, *Hon. Jack L. Grogins*, judge trial referee, on an unrelated matter and was incarcerated until May 13, 2011. Because Judge Calmar anticipated that the defendant would remain incarcerated at the time of the scheduled April 15, 2011 hearing, the court filed an application and a writ of habeas corpus ad testificandum requesting production of the defendant for the proceeding by video hearing. Similarly, because the defendant remained incarcerated at the time of a subsequent hearing on pending motions held on May 10, 2011, the court filed another application and writ of habeas corpus ad testificandum to allow the defendant's participation by videoconferencing. At both videoconference hearings, the defendant stated that he wanted to be physically present during the proceedings, although he had not filed applications requesting transportation to the court.

On May 3, 2011, Reich filed a motion seeking emergency custodial relief. She requested that the plaintiff temporarily be granted sole legal and physical custody of the minor children until the full hearing scheduled for the end of June was held. In that motion, Reich claimed that the defendant's behavior had deteriorated and that it was in the best interests of the children that they have limited supervised visitation pending the complete evidentiary hearing on the plaintiff's motion for modification and related pending motions. At the May 10, 2011 hearing, the court indicated that Reich's May 3, 2011 motion would be heard on May 19, 2011. The court stated that evidence at the May 19, 2011 hearing would be limited as follows: "I am directing the parties to return here on [May] 19th which is the Thursday of next week for the sole and limited purpose of allowing an evidentiary presentation on the subject of whether or not the children are unsafe in the custody

of their father between now and the time of trial or ruling."

On May 16, 2011, the defendant submitted to the court more than ten applications for the issuance of subpoenas for witnesses to testify at the May 19, 2011 hearing. The court denied all of the defendant's requests. At the May 19, 2011 hearing, the court provided the defendant with its reason for the denials: "The reason the court declined to enforce the subpoenas that you submitted was that every single one of the witnesses was identified as someone who could speak to the issue of alcohol use by your son.[3] And I had already indicated to the parties, Ms. Reich and [the plaintiff's counsel] that when they wanted to have individuals speak to that issue [at the May 10, 2011 hearing], while that was appropriate for the trial at the end of June and the overall issue of parenting responsibility and custody, it was not appropriate to have that issue raised in the context of whether or not you were an unsafe parent, and that this hearing which was scheduled at the inconvenience of numerous people, including the court and other witnesses, would be conducted on the sole and limited issue of whether or not you were an unsafe parent."[4]

On June 27, 2011, the scheduled trial commenced. The central motion for consideration was the plaintiff's postjudgment motion for modification of custody dated February 28, 2011. The defendant and Anthony Pavia, who was the former principal of the high school attended by the parties' son, testified that day. Before

[3] The defendant claimed that his daughter told him about an incident in which his son and his son's minor friends were drinking beer in the plaintiff's basement. The defendant claimed that the plaintiff knew or should have known about the incident and failed to take appropriate actions, thereby demonstrating that she was not a fit parent.

[4] At the conclusion of the May 19, 2011 hearing, the court ordered that all contact between the defendant and the minor children was to be supervised.

adjournment, the court ordered the defendant to arrive at 9:15 a.m. the following morning to comply with certain trial management orders before the trial resumed at 10 a.m. On June 28, 2011, the defendant arrived at the courthouse approximately two hours later than directed by the court. The defendant explained that his tardiness was due to the fact that he had filed a complaint with the judicial review council against Judge Calmar. After confirming that the complaint had been filed, the court referred the matter to Judge Holzberg to conduct a separate proceeding that morning to determine whether Judge Calmar should be disqualified from continuing to hear the matter. Judge Holzberg immediately held a hearing pursuant to Practice Book § 1-22 (b) and found no basis for Judge Calmar to disqualify himself as the judicial authority in the defendant's proceeding.[5] At that point, the defendant stated that "[t]his court is a fraud" and left the courtroom.

The trial continued in the defendant's absence, with testimony by Harry Adamakos, a psychologist, who was the court-appointed guardian ad litem. At the conclusion of that day's proceeding, the evidence was closed, and the court stated that it would write a memorandum of decision. On October 25, 2011, the court issued its decision granting the plaintiff sole legal and physical custody of the minor children and limited parenting time with the defendant. The orders with respect to the

[5] The defendant previously had moved to disqualify Judge Calmar several times during the course of this matter. It is important to recognize that Judge Calmar declined to automatically recuse himself as the judicial authority in this proceeding even though the defendant persisted in filing serial disqualification motions that had no merit. We note Judge Calmar's comment: "[J]ust briefly on the issue of recusal which was addressed earlier by Judge Holzberg, you know, this case needs a judge, [the plaintiff] needs a judge, [the defendant] needs a judge, but most importantly [the minor children] need a judge who is willing to oversee the proceedings, consider the evidence and documentation, and make decisions in the best interest of the children and the family. And unless there [is] a compelling reason to remove myself, I intend to be that judge."

older child, the parties' son, are not at issue in this appeal because he reached the age of majority while this appeal was pending.[6] With respect to the parties' daughter, who remains a minor, the court ordered limited supervised visitation. The court ordered, inter alia, that the defendant could attend games, practices and performances at his daughter's school, under specified conditions, but that he was not allowed to be alone with her at those events. This appeal followed.

I

The defendant's first claim is that the court's denial of his applications for the issuance of subpoenas for witnesses to testify at the May 19, 2011 hearing deprived him of his right to present a defense as a self-represented party. Specifically, the defendant argues: "The right to be heard is not only a fundamental right of a defendant to present a defense, but a compelling issue of the state when the health and welfare of others, and the legal liability related to underage drinking of a disenfranchised parent was undefined by a trial court (Calmar, J.) when an order of sole legal and physical custody had been entered." The defendant's claim is without merit.

Practice Book § 7-19 provides in relevant part: "Self-represented litigants seeking to compel the attendance of necessary witnesses in connection with the hearing of any civil matter . . . shall file an application to have the clerk of the court issue subpoenas for that purpose. The clerk . . . shall present the application to the judge before whom the matter is scheduled for hearing . . . which judge shall conduct an ex parte review of the application and may direct or deny the issuance of

---

[6] See *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 592 n.2, 952 A.2d 115 (2008) (father's claims challenging trial court's custody and visitation orders with respect to son dismissed as moot because son had reached age of majority).

subpoenas as such judge deems warranted under the circumstances, *keeping in mind the nature of the scheduled hearing and future opportunities for examination of witnesses*, as may be appropriate."[7] (Emphasis added.)

In the present case, the May 19, 2011 hearing was an interim hearing held for the limited purpose of determining whether the defendant was "an unsafe parent with respect to the minor children." The defendant did not dispute the fact that his designated witnesses were being subpoenaed for the purpose of demonstrating that the *plaintiff* was an "unsafe" parent. That issue, however, was not within the limited purpose of the May 19, 2011 hearing as articulated by the court. The court emphasized that the defendant would have his opportunity to explore the issue of the son's alleged basement beer drinking incident at the full evidentiary proceeding on the plaintiff's motion for modification of custody to be held the last week in June, 2011. As stated by the court: "The hearing in this matter, when all witnesses will be available for a more detailed review and analysis, will be conducted the last week in June carrying over into July, and at that time will be appropriate. But the court's obligation I think is to make a determination as to whether or not on an emergency basis the custody and visitation—parenting orders should be modified between now and then. That's the issue. That's what I intend to focus on."

The court, pursuant to Practice Book § 7-19, properly denied the defendant's applications for the issuance of subpoenas under these circumstances because the proffered testimony was not relevant to the limited purpose of the May 19, 2011 hearing, and the defendant would have the opportunity to subpoena those witnesses for the full evidentiary proceeding scheduled for

---

[7] Practice Book § 25-39 provides that the provisions of Practice Book § 7-19 apply to family matters.

the last week in June. The fact that he did not present the testimony of those witnesses at the June proceeding is of no consequence. On June 28, 2011, which was the second day of trial, the defendant decided to leave the courtroom when his request to disqualify Judge Calmar from the proceeding was denied. Even though the defendant had a full and fair opportunity to present his case, he voluntarily chose to absent himself from the proceeding. He had the right to be present and to be heard, but he did not avail himself of that right. Because he chose to forgo his opportunity to present witnesses and evidence at the June proceeding, he cannot succeed on his claim that he was deprived of his right to present a defense. See *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 509, 671 A.2d 844 (1996).

## II

The defendant's next claim is that the court deprived him of his constitutional right to appear in person at the April 15 and May 10, 2011 hearings.[8] He argues that, absent his consent to attend by videoconferencing, the court was required to have him transported from the correctional institution to the courtroom. We are not persuaded.

The defendant cites no relevant or persuasive case law that supports his position. At oral argument before this court, his counsel acknowledged that he had not discovered any cases during his research that were directly on point with the facts of this case. Significantly, Practice Book § 23-68 expressly permits appearances by incarcerated individuals in certain civil and family proceedings by means of an interactive audiovisual device.[9] The rule does not require the consent of the

[8] The defendant absented himself from the April 15, 2011 hearing, at which he was to appear and participate by videoconference, but he remained throughout the May 10, 2011 hearing and participated by videoconference.

[9] In the defendant's reply brief, the claim is raised for the first time that "the mechanism utilized by the court in this case did not comply with the Practice Book because the defendant was unable to see the Court." We

incarcerated individual if the judicial authority arranges for that individual's appearance by means of an interactive audiovisual device.

Furthermore, the defendant has not demonstrated that he was prejudiced in any way by appearing by means of an interactive audiovisual device rather than in person. At the April 15, 2011 hearing, the court considered the defendant's motion for order to remove Reich as the attorney for the minor children, the plaintiff's emergency motion for modification of custody to enable the plaintiff to enroll the parties' son in a private school, and the plaintiff's motion for contempt for the defendant's failure to pay retainer fees to an expert and the guardian ad litem as previously ordered by the court. At the beginning of the proceeding, after telling the court that he had not consented to a videoconference, the defendant declined to participate. He presented no evidence or comment to the testimony presented by the plaintiff with respect to those motions. Accordingly, the court denied the defendant's motion for an order to remove Reich as the attorney for the minor children, allowed the plaintiff to enroll the parties' son in a private school, and extended the date by which the defendant was obligated to make the requisite retainer payments. As previously discussed in part I of this opinion, the defendant had the opportunity to be present and to participate, but he chose to absent himself from the proceeding. He, therefore, has not demonstrated that he was deprived of any claimed constitutional right. See *Cole* v. *Planning & Zoning Commission,* supra, 40 Conn. App. 509.

At the May 10, 2011 hearing, the court scheduled the May 19, 2011 hearing and extended the date by which

decline to review this newly presented claim because "[c]laims . . . are unreviewable when raised for the first time in a reply brief." *Grimm* v. *Grimm,* 276 Conn. 377, 393 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

the defendant was obligated to file his financial affidavit and pay his share of the aforementioned retainers. The defendant does not indicate in his appellate brief how he was adversely impacted by these orders. For all of the foregoing reasons, the defendant's second claim fails.

## III

The defendant's third claim is that the court improperly delegated its judicial power to a nonjudicial agency. The defendant is referring to the court's order with respect to his attendance at his daughter's school events. Specifically, the defendant argues: "The Memorandum of Decision suggested that a school system . . . had been assigned a right to prohibit the defendant from attending public events as a citizen is more than troubling. The defendant challenges the constitutional authority for a trial court to transfer such a power to a non-judicial agency." (Citation omitted.)

The defendant's argument is less than a page in length and cites no case law. This claim is inadequately briefed, and we decline to review it. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005).

## IV

The defendant's fourth "claim" is, in reality, a request for this court to make a ruling on the validity of Practice Book §§ 25-60 and 25-60A.[10] The defendant argues that the "judiciary department," in adopting those provisions, violated General Statutes § 51-14[11] because Practice Book §§ 25-60 and 25-60A improperly expand the

[10] These rules of practice address court-ordered evaluations or studies in family matters.

[11] The judges of the Supreme Court, Appellate Court and Superior Court are empowered to adopt and promulgate rules "regulating pleading, practice

Superior Court's jurisdiction. He also claims that those provisions are invalid because the judiciary department failed to hold public hearings before their adoption.

The defendant's claim is unreviewable. Nowhere in the defendant's brief does he refer to arguments he made to the trial court, orally or by written motion, addressing this issue.[12] Clearly there is no ruling by the trial court on the defendant's fourth claim. We have nothing to review, and this court does not render advisory opinions. See *Capel* v. *Plymouth Rock Assurance Corp.*, 141 Conn. App. 699, 706, 62 A.3d 582 (2013).

The judgment is affirmed.

---

and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. . . . Such rules shall not abridge, enlarge or modify any substantive·right or the jurisdiction of any of the courts." General Statutes § 51-14 (a).

[12] This claim was not addressed in the plaintiff's· appellate brief, in the defendant's reply brief or during oral argument before this court.