******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

2 NATIONAL PLACE, LLC *v.* MICHAEL
D. REINER ET AL.
(AC 35642)

Bear, Keller and Harper, Js.*

*Argued April 24—officially released September 2, 2014*

(Appeal from Superior Court, judicial district of Hartford, Hon. Richard M. Rittenband, judge trial referee.)

*Jenna N. Sternberg*, for the appellant (plaintiff).

*David L. Gussak*, with whom, on the brief, was *Gary J. Greene*, for the appellee (defendant Greene Law, P.C.).

*Opinion*

KELLER, J. The plaintiff, 2 National Place, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendant law firm of Greene Law, P.C.[1] The plaintiff claims that the trial court improperly concluded that the defendant, as a matter of law, (1) did not breach its fiduciary duty to the plaintiff, and (2) was not vicariously liable for the alleged statutory theft, pursuant to General Statutes § 52-564, and unjust enrichment of its agent, Attorney Michael D. Reiner, who had provided the plaintiff with legal representation in connection with the closing of the sale of the plaintiff's real property. We affirm the judgment of the trial court.

The following facts, as alleged in the plaintiff's operative complaint,[2] and procedural history are necessary for our resolution of this appeal. By way of a three count complaint, the plaintiff commenced this action against the defendant and Reiner, in which he alleged breach of fiduciary duty, statutory theft pursuant to § 52-564, and unjust enrichment. The plaintiff, a Connecticut limited liability company of which the sole member is Charles Levesque, alleged that Reiner was licensed to practice law in Connecticut, and that prior to April, 2008, he practiced at the law firm of Reiner, Reiner & Bendett, P.C., in Farmington. On or about April 1, 2008, Reiner terminated his employment at Reiner, Reiner & Bendett, P.C., and became employed by the defendant law firm, a Connecticut corporation that had formed on or about March 31, 2008. Reiner previously had performed "various legal services" for the plaintiff while he was practicing at Reiner, Reiner & Bendett, P.C., and continued to do so after he began working for the defendant. The plaintiff understood that it owed no legal fees to Reiner, Reiner & Bendett, P.C., as of April, 2008, when Reiner left the firm.

At some point prior to July 16, 2008, the plaintiff retained Reiner to represent it in connection with a closing of the sale of real property that it owned known as 2 National Place in Danbury. The plaintiff alleged that "[p]rior to the closing, Reiner had stated that he would only charge the fee of $1,000 for the legal work associated with the closing and would hold the balance of the money for the benefit of the plaintiff." On July 16, 2008, with Reiner's assistance, the plaintiff closed on the sale of the property. At that time, "the settlement agent disbursed to [the defendant] the sum of $293,750, which was deposited in an [Interest on Lawyer Trust Account] held by [the defendant]." The defendant subsequently transferred $195,000 of that sum from the account to the plaintiff. The defendant then paid to Reiner, by check, the account's remaining balance of $98,750, allegedly without the plaintiff's knowledge or consent. Reiner later refused the plaintiff's demands to return the funds in excess of the agreed upon sum of

$1000 or to provide the plaintiff with an accounting of the funds. The plaintiff further alleged that Reiner and the defendant fraudulently claimed that the payment of $98,750 was intended to compensate Reiner for previous fees owed either to him or Reiner, Reiner & Bendett, P.C.

In count one of the complaint, the plaintiff alleged that because Reiner was working for the defendant at the time of the closing, the defendant therefore "owed the plaintiff a fiduciary duty, independent of the fiduciary duty owed by Reiner," and it breached that duty by failing to account for or to deliver the funds to the plaintiff, and by failing to "memorialize the basis upon which . . . [the defendant was] accepting custody and responsibility for the plaintiff's funds." In count two, the plaintiff alleged that the defendant was liable for statutory theft pursuant to § 52-564,[3] because the defendant and Reiner "intended to permanently deprive the plaintiff of its property," when the defendant received the funds or when Reiner subsequently refused to account for or to return them. Finally, in count three, the plaintiff alleged that the defendant and Reiner were liable under a theory of unjust enrichment as a result of Reiner's refusal to return the funds disbursed by the defendant.[4] In each count the plaintiff alleged that it suffered damages.

On August 10, 2012, the defendant filed an answer to the operative complaint, and, on October 15, 2012, it filed a motion for summary judgment as to liability. Along with its motion, the defendant filed a memorandum of law and affidavits by Reiner and Attorney Gary J. Greene, the defendant's president.[5] The plaintiff subsequently objected to the defendant's motion and filed a memorandum of law in opposition. It also submitted the affidavit of Levesque.[6] Significantly, the various affidavits revealed that there was a dispute as to the purpose of the payment made to Reiner: Levesque understood that the funds "would be applied against future legal fees incurred by [the defendant]," whereas Reiner believed that the funds were intended to compensate Reiner for legal work he previously had performed while practicing at Reiner, Reiner & Bendett, P.C. Greene, in contrast, averred that the payment to Reiner was made pursuant to a settlement statement, commonly referred to as a HUD-1, signed by Levesque, that indicated that $98,750 of the proceeds from the sale of the property were to be paid from the seller's funds at settlement to Reiner.

Oral argument on the motion for summary judgment was heard on January 28, 2013. On the same day, the court issued a written order denying in part and granting in part the motion. The court found that a genuine issue of material fact existed as to the purpose of the payment to Reiner, whether it was "for work done prior to and at the closing . . . or whether some of that money was

to be held by Attorney Reiner for future work," and therefore denied summary judgment as to Reiner. The court, however, granted summary judgment as to the defendant. With respect to the breach of fiduciary duty count against the defendant, the court stated: "Attorney Greene was not present at the closing, there is no claim that he knew of the dispute between [the plaintiff] and Attorney Reiner . . . ." The court continued: "Greene had no interest in the $98,750, which went solely to Attorney Reiner." Additionally, the court noted that the payment to Reiner "was solely the affair of the agent [of the defendant]," and concluded that the defendant could not, as a matter of law, be held liable for Reiner's allegedly wrongful acts. Accordingly, the court granted the motion for summary judgment as to liability with respect to the defendant.

On February 15, 2013, the plaintiff filed a motion to reargue, to which the defendant objected on February 20, 2013. On April 4, 2013, the court held a hearing on the motion to reargue and issued a written order affirming its decision granting summary judgment as to the defendant. The court stated: "There is no evidence of breach of fiduciary duty. The evidence at this point is that [the defendant] fulfilled its duty as fiduciary. The court affirms its decisions granting summary judgment in favor of [the defendant] on [the counts of] civil theft and unjust enrichment. . . . There is no evidence [the defendant] benefited financially or otherwise . . . ." This appeal followed. Additional facts and procedural history will be set forth as necessary.

As a preliminary matter, we set forth our standard of review and other legal principles relevant to evaluating a court's decision to grant a motion for summary judgment. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45]." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 704–705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

"Summary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant the defendant's motion for summary judgment is plenary. . . . The party seeking summary judgment has

the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In order for a motion for summary judgment to be granted properly, the moving party must demonstrate that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition [must] . . . be on evidence which a jury would not be at liberty to disbelieve and . . . where, on the evidence viewed in the light most favorable to the non-movant, the trier of fact could not reasonably reach any other conclusion than that embodied in the [summary judgment]." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Twenty-First Century Ins. Co.*, 301 Conn. 657, 661–62, 21 A.3d 816 (2011).

I

The plaintiff first claims that because a genuine issue of material fact existed as to the defendant's knowledge of the purpose and legitimacy of the payment to Reiner, the court improperly determined that, as a matter of law, the defendant did not breach its fiduciary duty to the plaintiff. We disagree.

We begin with a discussion of fiduciary relationships. "[I]n order to maintain a claim for breach of fiduciary duty, the plaintiff [is] required first to prove the existence of a fiduciary relationship." (Emphasis omitted.) *Golek* v. *Saint Mary's Hospital, Inc.*, 133 Conn. App. 182, 196–97, 34 A.3d 452 (2012). "The law does not provide a bright line test for determining whether a fiduciary relationship exists, yet courts look to well established principles that are the hallmark of such relationships. Our Supreme Court has stated that [a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords [it] great opportunity for abuse of the confidence reposed in him. . . . We have not, however, defined that relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other. . . . Fiduciaries appear in a variety of forms, including agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians. . . .

"The fact that one party trusts another is not dispositive of whether a fiduciary relationship exists . . . rather, proof of a fiduciary duty requires an evidentiary

showing of a unique degree of trust and confidence between the parties such that the [defendant] undertook to act primarily for the benefit of the plaintiff." (Citations omitted; internal quotation marks omitted.) *Iacurci* v. *Sax*, 139 Conn. App. 386, 401–402, 57 A.3d 736 (2012), cert. granted on other grounds, 308 Conn. 910, 61 A.3d 1100 (2013). In the present case, the parties are in agreement that they were bound in a fiduciary relationship and that the defendant owed the plaintiff certain fiduciary duties. We turn, therefore, to the second component of a breach of fiduciary duty claim.

"Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Internal quotation marks omitted.) *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 75, 940 A.2d 878 (2008). "[B]reach of a fiduciary duty implicates a duty of loyalty and honesty." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, supra, 139 Conn. App. 402. Finally, "a fiduciary . . . [has] the duty to deal fairly with [its client], not simply to act reasonably based upon the relevant information. . . . That is, the duty to make a 'reasonable' business decision based upon all the circumstances [is] not necessarily the equivalent of a duty to deal fairly, as a fiduciary, with the [client]." (Citation omitted.) *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 221, 635 A.2d 798 (1994).

The plaintiff argues that the defendant breached its fiduciary duty because it relied solely on the representations made in the HUD-1 settlement statement in disbursing the funds to Reiner, and the defendant did so without first obtaining his permission, as the client.

The following additional facts, which are not in dispute, are necessary to our resolution of this claim. As required by federal law, a HUD-1 settlement statement was prepared in connection with the closing on the sale of the property.[7] The HUD-1, which was attached as an exhibit to the affidavit submitted by Reiner, was signed by Levesque on behalf of the plaintiff, and identifies PM Danbury, LLC, as the borrower and purchaser of the property, The Washington Trust Company as the lender, and the subject property as 2 National Place in Danbury. It further lists the "contract sales price" of the property as $3,300,000, and revealed that the property was encumbered by two mortgages: a first mortgage in favor of Union Savings Bank in the amount of $1,347,046.04, and a second mortgage in favor of Savings Institute in the amount of $307,000.11. The HUD-1 also listed a "Payoff to Sovereign Bank" of $1,063,452.87. Finally, and of particular note, the HUD-1 indicated that "Attorney's Fees to Michael D. Reiner, Esq." in the

amount of $98,750 were to be "paid from seller's funds at settlement." The settlement agent certified, under penalty of false statement, that "[t]o the best of my knowledge, the HUD-1 settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed as part of the settlement of this transaction."

Having thoroughly reviewed the complaint, the motion for summary judgment and the plaintiff's objection thereto, and the parties' supporting affidavits and documentation, we conclude that the court properly granted the defendant's motion for summary judgment. Although the plaintiff alleged that the defendant breached its fiduciary duty by making a payment to Reiner in accordance with the terms of the HUD-1 settlement statement, the defendant successfully demonstrated an absence of any genuine issue of material fact as to whether it acted fairly, as a fiduciary, with the plaintiff. The plaintiff, in turn, has failed to provide any foundation establishing a lack of fair dealing on the part of the defendant.

In his affidavit, Greene expressly averred that the funds from the plaintiff's settlement proceeds were disbursed to Reiner in accordance with the terms set forth in the HUD-1 settlement statement, and that the defendant "did not take a fee for representing [the plaintiff] in the [c]losing." Further, in support of its motion for summary judgment, the defendant submitted the transcript of the deposition of Greene. Therein, Greene stated that it was his understanding that the funds were included on the HUD-1 and to be disbursed to Reiner because Reiner, in separating from his former law firm, had purchased certain accounts receivable, and the payment was "money that was owed to Reiner, Reiner & Bendett," and "had nothing to do with the defendant." Indeed, the HUD-1 expressly stated that the sum of $98,750 in "attorney's fees" was to be paid from the plaintiff's funds at settlement to "Michael D. Reiner, Esq.," and not to either the defendant or Reiner, Reiner & Bendett, P.C.

In response, Levesque averred, inter alia, that until mid-2009, he was the sole president, director and shareholder of Fairfield Financial Mortgage Group, Inc. (Fairfield Financial), a Connecticut corporation engaged in "the origination of residential mortgages for a profit . . . ." While Reiner was practicing at Reiner, Reiner & Bendett, P.C., he performed a significant amount of legal work for the plaintiff and various other entities with which he was associated, including Fairfield Financial. Although Reiner's former law firm failed to provide regular billing statements, Levesque attested that he did not believe there to be any outstanding fees owed to Reiner, Reiner & Bendett, P.C., at the time of the closing. He averred that "at some point between March and July 2008, Attorney Reiner agreed to accept money from

the closing to hold as retainer funds for future work performed on behalf of [Levesque and his associated] entities." These attestations, however, do not implicate the defendant or create any question as to whether the defendant had in fact acted fairly as the plaintiff's fiduciary. The evidence merely demonstrated that the defendant relied on and acted in accordance with the terms of the HUD-1 settlement statement, which was signed by the plaintiff.

Neither the plaintiff's pleadings nor the evidence before the court raised the specter that the defendant acted in a manner that was dishonest or disloyal to the plaintiff in the course of their fiduciary relationship. Instead, the evidence demonstrated that based on the relevant terms of the HUD-1 settlement statement— which was signed by Levesque, who himself was well experienced with residential mortgages—the defendant issued a check to Reiner. No evidence was submitted that showed that the defendant's representation of the plaintiff was directly adverse to the plaintiff in any way, or that disloyalty or dishonesty encouraged the defendant to disburse the funds in a manner not in accordance with the terms of the HUD-1. Indeed, the plaintiff has not alleged any form of collusion or scheme between the defendant and Reiner.

The plaintiff argues on appeal that "the circumstances leading up to the sale of the property raised or should have raised several red flags for [the defendant] relating to the amount of attorney's fees claimed by Reiner . . . making it inappropriate to rely on the [HUD-1] settlement statement without first obtaining sufficient documentation and/or clear client approval . . . ." Specifically, the plaintiff argues that the attorney's fees were disproportionately high compared to the sales price. The evidence before the court, however, did not demonstrate that the defendant acted in an unfair manner in its capacity as fiduciary. "Professional negligence alone . . . alone does not give rise automatically to a claim for breach of fiduciary duty. Although an attorney-client relationship imposes a fiduciary duty on the attorney . . . not every instance of professional negligence results in a breach of fiduciary duty. . . . Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." (Internal quotation marks omitted.) *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 759, 87 A.3d 1134, cert. denied, 311 Conn. 944, 90 A.3d 975 (2014). A review of the pleadings and evidence before the court reveals that the plaintiff's claim of breach of fiduciary duty sounds not in a breach of the defendant's duty of loyalty or honesty. Instead, the facts of this case evoke a question of whether the defendant fulfilled its duty of care—a cause of action the plaintiff did not plead. See, e.g., id.

Because the duties of loyalty and honesty are not

implicated by the facts of this case when viewed in the light most favorable to the plaintiff, we conclude that the court properly granted the defendant's motion for summary judgment as to the breach of fiduciary duty count.

## II

We next turn to the plaintiff's claim that the court improperly concluded that, as a matter of law, the defendant could not be held liable for the alleged statutory theft or unjust enrichment of Reiner. We conclude that the court properly granted the defendant's motion for summary judgment as to these two counts of the plaintiff's complaint.

The plaintiff's claim rests on a theory of vicarious liability, and specifically the doctrine of respondeat superior. See footnote 4 of this opinion. "[T]he fundamental principles of the doctrine of respondeat superior are well established in Connecticut. Under the doctrine of respondeat superior, a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. . . . The master is not held on any theory that he personally interferes to cause the injury. It is simply on the ground of public policy, which requires that he shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given them on the subject. . . . [I]n order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. . . . But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." (Internal quotation marks omitted.) *Cornelius* v. *Dept. of Banking*, 94 Conn. App. 547, 557, 893 A.2d 472, cert. denied, 278 Conn. 913, 899 A.2d 37 (2006).

"In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer. . . . Ordinarily, it is a question of fact as to whether a willful tort of the servant has occurred within the scope of the servant's employment . . . [b]ut there are occasionally cases [in which] a servant's digression from [or adherence to] duty is so clear-cut that the disposition of the case becomes a matter of law." (Citation omitted; internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 782–83, 835 A.2d 953 (2003). Furthermore, "[w]hile a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry

in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Internal quotation marks omitted.) *Mullen* v. *Horton*, 46 Conn. App. 759, 764, 700 A.2d 1377 (1997).

In rendering summary judgment in favor of the defendant, the court concluded that the evidence demonstrated that although Reiner was the defendant's agent within the context of the closing, the payment to Reiner was "solely the affairs of the agent." Further, in concluding that Reiner's actions were not in furtherance of the defendant's business, the court stated, "[t]here is no evidence [the defendant] benefited financially or otherwise . . . ." We agree with the court and conclude that it properly granted the defendant's motion for summary judgment with respect to the plaintiff's claims of statutory theft and unjust enrichment because a genuine issue of material fact did not exist as to this issue.

Viewing the circumstances on summary judgment in the light most favorable to the plaintiff, we conclude that any injury incurred by the plaintiff in this matter, as it pertains to the defendant's culpability, resulted from Reiner acting outside the scope of his employment by the plaintiff, and not by the defendant. The plaintiff produced no evidence that Reiner's acts were in furtherance of the defendant's interests, or that Reiner was "motivated" or "actuated" by a purpose to serve or benefit the defendant. Levesque's affidavit is devoid of any statements that can be construed to suggest that Reiner, by his alleged statutory theft or unjust enrichment, intended in any way to advance the defendant's interests, or that the defendant's interests in fact were advanced. Nor does the plaintiff identify any particular interest that would be advanced by Reiner's alleged statutory theft and unjust enrichment. Moreover, the undisputed facts reveal that the defendant did not have any monetary interest in the funds disbursed to Reiner, as Greene expressly averred in his affidavit that the defendant "did not take a fee for representing [the] plaintiff in the [c]losing." The counts in the complaint merely set forth in one paragraph a legal conclusion that the defendant is liable for damages caused by its employee in the course of business. " 'In the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment.' " *Brown* v. *Housing Authority*, 23 Conn. App. 624, 628, 583 A.2d 643 (1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991). Ultimately, at issue, is a dispute between the plaintiff and Reiner, and the evidence produced by the parties failed to implicate the defendant or to create a genuine issue of material fact as to whether the defendant was liable for the wrongful acts of its employee,

acting outside the scope of his employment.

On close examination of the record and the specific facts of this case, we conclude that there was no evidence before the court from which it could conclude that Reiner was motivated by a purpose to advance the defendant's interests through his alleged statutory theft and unjust enrichment. The court, therefore, properly granted the defendant's motion for summary judgment as to those counts.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Attorney Michael D. Reiner was also a defendant in this action. The summary judgment from which the plaintiff appeals, however, was rendered solely in favor of Greene Law, P.C. Accordingly, Reiner is not a party to this appeal. All references to the defendant in this opinion are to Greene Law, P.C., and, where necessary, we refer to Reiner by name.

[2] The operative complaint is the second revised complaint dated March 5, 2012.

[3] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[4] The statutory theft and unjust enrichment counts of the complaint appear to be based on theories of both direct and vicarious liability. On appeal, however, the plaintiff states in its principal brief that "both counts are based on agency principles," and only argues that the defendant is vicariously liable for Reiner's wrongful acts. The plaintiff claims for the first time in its reply brief that the defendant is directly liable for statutory theft and unjust enrichment. It is well established that "[c]laims . . . are unreviewable when raised for the first time in a reply brief." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 144 Conn. App. 503, 512 n.9, 72 A.3d 1245, cert. denied, 310 Conn. 939, 79 A.3d 891 (2013). Such is the case here, and, accordingly, we do not consider these arguments. See part II of this opinion.

[5] The affiants attached to their affidavits, as exhibits, extensive documentation. These exhibits included, inter alia, copies of the affiants' deposition transcripts, the purchase and sale agreement for the sale of the property, a Housing and Urban Development settlement statement (commonly referred to as a HUD-1), e-mail correspondence, wire transfer confirmations, and bills for legal fees.

[6] Levesque also attached a number of exhibits to his affidavit, including, inter alia, e-mail correspondence between himself and Reiner, and bills for legal fees.

[7] A HUD-1 settlement statement is created pursuant to the Real Estate Settlement Procedures Act and "[sets] forth settlement charges in connection either the purchase or refinancing" of a property. 24 C.F.R. § 3500.2 (b). The HUD-1, essentially, is an itemized list of the costs and fees associated with closings and disbursements of loan proceeds.